**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SHIRLEY GRAHAM-JOHNSON, JEROME JOHNSON,
LENORA GRAHAM, and SHIRLEY GRAHAM-
JOHNSON as legal guardian of K.G.J., R.D., A.J., M.J.,          1:19-cv-01274 (BKS/CFH)
Ra.J.F., and R.J.F.,

                                        Plaintiffs,

v.

THE CITY OF ALBANY, RICHARD LAJOY, in his
individual capacity, DANIEL SHERMAN, in his
individual capacity, VALERIE SCOTT, in her individual
capacity, R. RUSSELL REEVES, in his individual
capacity, M. CRISTO, INC.,

                                        Defendants.

---

M. CRISTO, INC.,

                                        Cross-Claimant,

v.

THE CITY OF ALBANY, DANIEL SHERMAN,
VALERIE SCOTT, and R. RUSSELL REEVES,

                                        Cross-Defendants.

---

**Appearances:**

*For Plaintiffs:*
Brian D. Deinhart
Cooper Erving & Savage LLP
39 North Pearl Street, 4th Floor
Albany, NY 12207

*For Defendants City of Albany, Richard LaJoy,*
*Daniel Sherman, and Valerie Scott:*
William G. Kelly
Corporation Counsel, City of Albany
Robert G. Magee
Deputy Corporation Counsel
City Hall
24 Eagle Street, Room 106
Albany, NY 12207

*For Defendant R. Russell Reeves:*
David H. Walsh
Kenney Shelton Liptak Nowak LLP
4615 North Street
Jamesville, NY 13078

*For Defendant M. Cristo, Inc.:*
Bryan T. Schwartz
Gallo Vitucci Klar, LLP
90 Broad Street, 12th Floor
New York, NY 10004

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.   INTRODUCTION

This action stems from the City of Albany's demolition of the house located at 170

Orange Street, Albany, New York ("170 Orange Street") on October 20, 2018. (Dkt. No. 1).

Plaintiffs Shirley Graham-Johnson, Jerome Johnson, Lenora Graham, and Shirley Graham-

Johnson as legal guardian of minors K.G.J., R.D., A.J., M.J., Ra.J.F., and R.J.F., bring this action

against Defendants City of Albany (the "City"), Richard LaJoy, the City's Director of the

Department of Buildings and Regulatory Compliance ("Buildings Department"), Daniel

Sherman, a Senior Building Inspector for the City, and Valerie Scott, the Buildings Department

Supervisor (collectively, the "City Defendants). (*Id.*). Plaintiffs also name as defendants R.

Russell Reeves, an engineer the City engaged to evaluate Plaintiffs' property, and M. Cristo, Inc.

2

("M. Cristo"), the company that performed the demolition. (*Id.*). Plaintiffs bring five[1] causes of action: (1) deprivation of property without due process of law, in violation of the Fourteenth Amendment, under 42 U.S.C. § 1983 (First Cause of Action); (2) the taking of property for public use, without just compensation, in violation of the Fifth Amendment, under 42 U.S.C. § 1983 (Second Cause of Action); and (3) tortious conduct in violation of New York common law (Third, Fifth, and Sixth Causes of Action).[2] (Dkt. No. 1). Defendant M. Cristo brings a cross-claim for common law indemnification and contribution against the City Defendants and Reeves. (Dkt. No. 10, ¶¶ 63–66).

There are four motions before the Court: the City Defendants' motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), (Dkt. No. 6); Reeves' motion to dismiss Plaintiffs' § 1983 claims against him, (Dkt. No. 21); the City Defendants' motion to dismiss M. Cristo's cross-claim, (Dkt. No. 19); and M. Cristo's cross-motion to amend, (Dkt. No. 26). The Court has considered Defendants' motions and all responses and grants in part and denies in part the motions as follows.

## II.    FACTS[3]

The house at 170 Orange Street was Plaintiffs' "family home."[4] (Dkt. No. 1). It was "immediately adjacent to" the neighboring house at 172 Orange Street, with which it had a "shared wall, sometimes known as a 'party wall.'" (*Id.* ¶¶ 2, 34). From the outside, it was

---

[1] The causes of action are labeled First through Sixth but omit "Fourth." (Dkt. No. 1, ¶¶ 85–131).

[2] Plaintiffs "concede the minor Plaintiffs . . . have no constitutional claims against the City." (Dkt. No. 15, at 12). Accordingly, to the extent the Complaint alleges constitutional claims on behalf of the minor Plaintiffs, those claims are dismissed.

[3] The facts are drawn from the Complaint. (Dkt. No. 1). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[4] Plaintiffs Shirley Graham Johnson, Jerome Johnson, and Lenora Graham own 170 Orange Street. (Dkt. No. 1, ¶ 31).

"readily apparent that the buildings were connected" as "[t]here was no physical space between the two structures." (*Id.* ¶¶ 2, 35).

On October 19, 2018, City Buildings Department Director LaJoy and Senior Building Inspector Sherman contracted with Reeves, an engineer, on the City's behalf, "to perform an emergency structural assessment of 172 Orange Street." (*Id.* ¶ 32). Reeves "performed the assessment" that day and "around 6:00 p.m., and issued a report" stating that "a collapse of several of the buildings [sic] floors as well as a partial collapse of its foundation was considered imminent" and recommending "that the building should be demolished." (*Id.* ¶ 36).

Plaintiffs, with the owner's permission, had stored "personal property" inside 172 Orange Street. (*Id.* ¶ 37). "Despite knowledge of R. Russell Reeves' opinion that 172 Orange Street was in danger of imminent collapse . . . Daniel Sherman and or Richard LaJoy allowed Plaintiffs and family members to repeatedly enter 172 Orange Street to enter the building to gather their personal property." (*Id.* ¶ 38).

On October 20, 2018, Scott, a Buildings Department Supervisor, signed and issued a notice of emergency demolition of 172 Orange Street. (*Id.* ¶ 40). That morning, "M. Cristo, Inc., and its employees," with whom the City, "at the direction" of LaJoy and Sherman," had contracted for demolition services, "arrived at 172 Orange Street . . . to begin demolition." (*Id.* ¶¶ 39, 43). Sherman, LaJoy, and Reeves "were present on behalf of the City to oversee demolition." (*Id.* ¶ 44).

Plaintiffs became concerned as "crews arrived outside 172 Orange Street," along with "demolition equipment," including a "hydraulic excavator," "which Plaintiffs believed posed a threat to [their] home if used in the demolition." (*Id.* ¶ 47). Plaintiffs "approached . . . agents and employees of both M. Cristo, Inc., and the City," and told them "that 172 Orange Street shared a

wall with Plaintiffs' home at 170 Orange Street." (*Id.* ¶ 45). The "agents and employees of the city of Albany and M. Cristo, Inc.," assured Plaintiffs "that the demolition crew were aware of the risks and knew how to perform demolition safely."[5] (*Id.* ¶ 48). Defendants did not give Plaintiffs "any notice that they should vacate 170 Orange Street during the demolition of 172 Orange Street" but "affirmatively instructed" them "to close their windows during demolition." (*Id.* ¶ 50).

"Shortly after the demolition commenced, the demolition machine, believed to be a hydraulic excavator . . . tore into the roof of 170 Orange Street, removing portions of the roof . . . near the northwest corner of the house while the family was still inside" and filling "the air inside the house with debris and particulate matter that Plaintiffs inhaled." (*Id.* ¶¶ 51, 53). Plaintiffs "rapidly gather[ed] a few personal items," "briefly inspect[ed] the damage," and "fled the house in terror." (*Id.* ¶ 54). "[A]t the direction of" LaJoy, Reeves, and Sherman, the City "began shoring 170 Orange Street shortly after the structure was damaged." (*Id.* ¶ 57).

The same day, following the demolition of 172 Orange Street and damage to 170 Orange Street, and "even though Mr. Reeves was present," "Plaintiffs were allowed to enter and exit 170 Orange Street repeatedly for hours, extending into the early morning of October 21, 2019, [sic] to retrieve belongings." (*Id.* ¶ 63).

On October 23, 2018, Reeves "completed a structural condition assessment of 170 Orange Street" and recommended demolition. (*Id.* ¶ 58). In the report, Reeves wrote that 170 Orange Street had "numerous structural deficiencies" and that "a collapse of a large portion of the roof section is considered imminent." (*Id.* ¶ 59). Reeves observed that "[t]he existing

---

[5] According to Plaintiffs, "there is a simple test for the existence of shared walls, which involved simply cutting a small hole into the roofs of both houses where the structures connect to examine the wall structure" but Defendants "failed to perform or recommend such test." (Dkt. No. 1, ¶ 56).

perimeter concrete foundation of the rear addition is deficient and highly unstable" and a "collapse of any portion of this foundation wall" was "considered imminent." (*Id.*). Reeves noted that the "lower rear exterior wall" was "not attached to the foundation" and was "not supporting the rear upper wall section" and that "localized and partial collapse of the rear wall" was "imminent." (*Id.*). Reeves "further noted the entire Easterly foundation wall and easterly exterior stud wall" were "highly unstable." (*Id.*). Reeves stated that he considered the "present condition of the building at 170-Orange Street" to be "a high hazard to public safety" and that it "shall be removed as soon as practicable under the City of Albany's Emergency Condemnation Procedures." (*Id.*).

"[O]n the morning of October 24, 2018, less than a day after Mr. Reeves issued his report," the City "commenced an 'emergency' demolition of the property." (*Id.* ¶ 65). At no time between Reeves' recommendation and the time of demolition did the City notify Plaintiffs "that their house was to be demolished." (*Id.* ¶ 75). Plaintiffs assert that although the notice of emergency demolition for 170 Orange Street was dated October 24, 2019, Scott did not issue it until after the demolition occurred. (*Id.* ¶ 76). Plaintiffs "had no opportunity to make their case for the preservation of their longtime family home." (*Id.* ¶ 77).

Plaintiffs allege "[u]pon information and belief" that the City, under LaJoy and Reeves' direction, "routinely undertakes emergency stabilization of historic homes." (*Id.* ¶ 67). Plaintiffs refer to a newspaper article in support of their assertion that in December 2018, the City "spent roughly $160,000 to stabilize a house at 19 Second Street, where several floors had collapsed and the back wall was 'compromised.'" (*Id.* ¶ 68). Plaintiffs further allege that Reeves was the engineer who recommended stabilization of 19 Second Street, and that LaJoy directed the

stabilization and that the City knew of 19 Second Street's condition, "but did not act on the stabilization" for more than six months. (*Id.* ¶¶ 69–70).

Plaintiffs assert that "there were no surrounding structures to which 170 Orange Street could have posed any danger," "the portion of Orange Street" on which Plaintiff's home was located was lightly trafficked" and the sidewalk "could have been temporarily blocked" to the extent the property posed a hazard. (*Id.* ¶¶ 73–74).

Following the demolition of 170 Orange Street, the City, at LaJoy and Scott's direction, issued Plaintiff a bill "for the costs of demolition totaling roughly $36,000." (*Id.* ¶ 83).

## III.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   DISCUSSION

### A.   Fourteenth Amendment Claim

The City Defendants move for dismissal of Plaintiffs' Fourteenth Amendment procedural due process claim on the grounds that: (i) the "Fourteenth Amendment does not require a pre-deprivation hearing in the case of an emergency demolition"; (ii) Plaintiffs failed to allege that

the City Defendants lacked competent evidence to believe an emergency existed, or that their decision "to invoke an emergency procedure was 'arbitrary'" or an "abuse of discretion"; (iii) Plaintiffs failed to allege that the "state's post-deprivation remedies were inadequate"; and (iv) it is duplicative of Plaintiffs' Fifth Amendment claim. (Dkt. No. 6-1, at 8–10).

"The Fourteenth Amendment prohibits a state from 'depriv[ing] any person of life, liberty, or property, without due process of law.'" *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009) (citing U.S. Const. amend. XIV, § 1). The Fourteenth Amendment's Due Process Clause contains both a procedural component and a substantive component. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The procedural component applies where there is an alleged deprivation by government action of a constitutionally protected interest without sufficient procedural safeguards, such as notice and a hearing. *Id.*

Review of a procedural due process question involves a "two-step inquiry;" the Court "must determine (1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process [the plaintiff] was due before [the plaintiff] could be deprived of that interest." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). It is well-settled that "although notice and a predeprivation hearing are generally required, in certain circumstances, the lack of such predeprivation process will not offend the constitutional guarantee of due process, provided there is sufficient postdeprivation process." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 538 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)). "[E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at

some time after the initial taking, can satisfy the requirements of procedural due process." *Id.* (quoting *Parratt*, 451 U.S. at 539).

Therefore, in "emergency situations a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *WWBITV*, 589 F.3d at 50 (quoting *Parratt*, 451 U.S. at 539). "[W]here there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Catanzaro*, 188 F.3d at 63. The reason for this "somewhat deferential standard" is that officials must be able to take "prompt action to insure the public safety." *Id.* But ultimately, "[w]hether the official abused his discretion or acted arbitrarily in concluding that a genuine emergency exists is a factual issue, subject to the usual considerations for a district court addressing a summary judgment motion." *WWBITV*, 589 F.3d at 51.

Therefore, in emergencies, due process is violated "only when an emergency procedure is invoked in an abusive and arbitrary manner," assuming post-deprivation processes are adequate. *Reynolds v. Krebs*, 336 F. App'x 27, 29 (2d Cir. 2009) (citing *Catanzaro*, 188 F.3d at 62). "At the pleading stage . . . a plaintiff must provide factual allegations that permit a plausible inference that (1) the relevant official(s) lacked 'competent evidence . . . to reasonably believe' that an emergency existed; or (2) that an official's decision to invoke an emergency procedure was 'arbitrary or amount[ed] to an abuse of discretion'; or (3) that a state's post-deprivation remedies are somehow inadequate." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 45 (2d Cir. 2014) (quoting *Catanzaro*, 188 F.3d at 63).

Here, as discussed below, the Complaint, which does not dispute the condition of 170 Orange Street, fails to allege facts that would allow a plausible inference that the City Defendants lacked competent evidence to believe an emergency existed or that their decision to take emergency action and demolish 170 Orange Street was an abuse of discretion or arbitrary. *WWBITV*, 589 F.3d at 51. Further, even assuming the truth of Plaintiffs' allegations regarding alternatives to demolition and the timing of the demolition, these allegations are insufficient to suggest a lack of emergency.

Plaintiffs assert it is plausible to infer there was no immediate danger because they were allowed—in LaJoy, Sherman, and Reeves' presence—to "enter and exit 170 Orange Street repeatedly for hours" on October 20, 2018 and into the early morning of October 21, after the property was damaged by the demolition to the adjoining house and just days before it was demolished. (Dkt. No. 1, ¶ 63). Even assuming LaJoy, Sherman, and Reeves permitted Plaintiffs to enter 170 Orange Street on October 20 and 21, 2018, knowing it had been damaged, this was two days *before* Reeves conducted the October 23 structural assessment and determined that it presented a "high hazard to public safety" and must be removed. (*Id.* ¶ 58). Thus, the allegation that the City Defendants allowed Plaintiff to enter the residence before they had Reeves' report opining that collapse was imminent does not allow a plausible inference that LaJoy or Sherman lacked "competent evidence . . . to reasonably believe an emergency existed," *Catanzaro*, 188 F.3d at 63, when they determined on October 24 that demolition of 170 Orange Street was required. *See Smith v. City of Albany*, No. 03-CV-1157, 2006 WL 839525, at *13, 2006 U.S. Dist. LEXIS 22954, at *40 (N.D.N.Y. Mar. 27, 2006) (finding, at the summary judgment stage, that fact that the defendants allowed tenants to remain inside the building "[w]hile the determination to demolish the building was being made . . . standing alone, is insufficient to

bolster plaintiff's argument that no emergency existed with respect to the conditions inside his building"). Indeed, there is no allegation that Plaintiffs were allowed to enter 170 Orange Street while, or after, Reeves conducted the structural assessment of the residence.

Plaintiffs contend that the "four days" "it took Mr. Reeves and the City officials to determine whether . . . the condition of 170 Orange Street required emergency demolition" "belies their conclusion that the property's condition . . . necessitated an immediate demolition." (*Id.* ¶ 65). Plaintiffs are referring to the four-day period beginning with the damage to their residence on October 20, 2018, Reeves' October 23 structural assessment, and ending on October 24, when their residence was demolished. In *Canzoneri v. Incorporated Village of Rockville Centre*, the plaintiff asserted that "while the property had deteriorated," the "10-day remediation period" the defendant gave him in January 2011 to repair the property and the "passage of time from" of six months—from January 2011 to June 2011—"before the demolition belies any claim of immediacy" or imminent danger. 986 F. Supp. 2d 194, 204 (E.D.N.Y. 2013). Based on these allegations, the court concluded that the plaintiff had "set forth sufficient allegations at the motion to dismiss stage to withstand the defense of emergency." *Id.* Here, in contrast, the three-day time period between the damage to 170 Orange Street and the October 23, 2018 structural assessment, and the demolition one day later, suggests, rather than "betrays a lack of[,] urgency." *Id.*

Plaintiffs assert that even if "there was an emergency, it could have been remedied by action less destructive than the immediate demolition of [their] property," such as repairs. (Dkt. No. 15, at 6–7). Plaintiffs further assert that LaJoy and Reeves, "routinely undertake[] emergency stabilizations of historic homes." (Dkt. No. 1, ¶ 67). According to the Complaint, in December 2018, on Reeves' recommendation, LaJoy directed the stabilization of a "house at 19

Second Street [in the City] where several floors had collapsed and the back wall was 'compromised.'" (*Id.* ¶ 68). But here Plaintiffs do not dispute Reeves' findings that 170 Orange Street had "numerous structural deficiencies" or that a partial collapse of the foundation and a large portion of the roof section were "considered imminent," and their assertion regarding repairs is speculative. (*Id.* ¶ 59). They assert that the "imminent" collapse did not pose a threat to public safety, alleging that there were no "neighboring structure[s]" following the demolition of 172 Orange Street, "the portion of Orange Street on which the Graham-Johnson family's home was located was lightly trafficked," and the City "could have . . . temporarily blocked" "any portion of the sidewalk that may have been made hazardous by any defective condition of 170 Orange Street." (*Id.* ¶ 74). However, even accepting these assertions as true, temporary alternatives would not allow a plausible inference that an emergency did not exist or that collapse was not imminent. *See WWBITV*, 589 F.3d at 52 (rejecting claim that "the Village could have protected the public with temporary devices such as boarding up the building and removing the debris from the sidewalk" explaining that "[a]ssuming arguendo that plaintiffs have raised valid questions about whether the Village chose the best possible method of safeguarding the public, such a showing is not sufficient to defeat summary judgment" because "hindsight analysis of a municipality's means of dealing with an emergency would encourage delay and risk increasing the public's exposure to dangerous conditions" (citing *Catanzaro*, 188 F.3d 56)). The Court therefore concludes that Plaintiffs have failed to plausibly allege there was no emergency requiring immediate action or that the City Defendants' decision to take emergency action was arbitrary or an abuse of discretion. *See Rohde v. City of New York*, No. 99-cv-8714, 2000 WL 1372835, at *4, 2000 U.S. Dist. LEXIS 13867, at *12 (S.D.N.Y. Sept. 25, 2000) (granting motion to dismiss where complaint did not dispute that building was in imminent danger of

collapse and "there is no indication even in plaintiff's own pleading of any arbitrary act or abuse

of discretion which would justify a federal constitutional claim for the demolition"). As there is

no dispute that state post-deprivation procedures are available, the Complaint fails to state a

plausible procedural due process claim. Accordingly, the City Defendants' motion to dismiss this

claim is granted.

### B.      Takings Claim

The City Defendants move to dismiss Plaintiffs' Fifth Amendment takings claim on the

ground that the Complaint "fails to allege a final decision by City Defendants" and is therefore

not ripe for review. (Dkt. No. 6-1, at 10). Citing the Supreme Court's two-prong test in

*Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985),

*overruled in part by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019), the City Defendants assert

that the "Complaint contains no allegation that Plaintiffs sought to avail themselves of any

formal process of appeal or that the City of Albany made a final decision regarding whether to

compensate Plaintiffs." (Dkt. No. 6-1, at 11).

"To be justiciable, a cause of action must be ripe—it must present a real, substantial

controversy, not a mere hypothetical question." *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506,

511 (2d Cir. 2014) (quoting *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir.

2013)). "A claim is not ripe if it depends upon contingent future events that may or may not

occur as anticipated, or indeed may not occur at all. The doctrine's major purpose is to prevent

the courts, through avoidance of premature adjudication, from entangling themselves in abstract

disagreements." *Id.* (quotation marks and internal citation omitted).

Under *Williamson County*, a takings claim is not ripe for federal review until "(1) the

state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has

sought just compensation by means of an available state procedure." *Dougherty v. Town of N.*

*Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Williamson Cty.*, 473

U.S. at 186, 194–95). In 2019, the Supreme Court overruled *Williamson County's* "state-

litigation requirement." *See Knick*, 139 S. Ct. at 2167.

Here, the allegation that the home was demolished is sufficient to establish the finality of

the decision. This is unlike the justiciability of a regulatory takings claim, which concerns a

landowner's ability to develop property within the bounds of a new zoning ordinance. *See*

*Williamson*, 473 U.S. at 178–79. "The law recognizes two species of takings: physical takings

and regulatory takings." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006). A

physical taking "occurs when there is either a condemnation or a physical appropriation of

property." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (citing

*Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002)).

"[A]n alleged physical taking is by definition a final decision for the purpose of satisfying

*Williamson*'s first requirement." *Juliano v. Montgomery-Otsego-Schoharie Solid Waste Mgmt.*

*Auth.*, 983 F. Supp. 319, 323 (N.D.N.Y. 1997). Plaintiffs' allegation that the City Defendants

condemned and demolished their house adequately alleges a physical taking and satisfies the

finality requirement. *See Herman v. Town of Cortlandt, Inc.*, No. 18-cv-2440, 2019 WL

2327565, at *5, 2019 U.S. Dist. LEXIS 90577, at *11 (S.D.N.Y. May 30, 2019) (concluding that

the plaintiffs satisfied the finality requirement "for a federal takings claim to be ripe . . . because

they have adequately pleaded that the Town perpetrated a physical taking of their mobile home"

when it was demolished). Accordingly, as the City Defendants identify no other basis for

dismissal, their motion to dismiss Plaintiffs' takings claim is denied.

### C. Qualified Immunity

Defendants LaJoy, Scott, and Sherman argue that they are entitled to qualified immunity

with respect to the § 1983 claims. (Dkt. No. 6-1, at 11–13). LaJoy and Sherman contend that the

Complaint fails to allege that their conduct in deciding to demolish 170 Orange Street, based on Reeves' recommendation, "was arbitrary and capricious and beyond the ambit of qualified immunity." (*Id.* at 12). Scott similarly contends that the Complaint fails to allege that her conduct in issuing the notice of emergency demolition and a bill for the cost of demolition to Plaintiffs was "rights-violating" or "arbitrary or capricious." (*Id.* at 13). "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)); *see also generally Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants bear the burden of establishing qualified immunity. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). As the Court has dismissed Plaintiff's procedural due process claim and the City Defendants have addressed qualified immunity only with respect to procedural due process, and not in the context of the takings claim, their motion to dismiss on grounds of qualified immunity is denied.

### D.    State Actor

Reeves moves to dismiss Plaintiffs' § 1983 claims against him on the ground that the Complaint fails to allege that he—a private structural engineer—was "acting under color of state law or [was] a state actor." (Dkt. No. 21-1, at 5). Plaintiffs argue that they have sufficiently alleged Reeves is a state actor because "he has been a willful participant in the joint activity of the City of Albany in wrongfully demolishing Plaintiffs' home." (Dkt. No. 31, at 6).

"Under 42 U.S.C. § 1983, constitutional torts are only actionable against state actors or private parties acting 'under the color of' state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quoting *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)). While there is "no single test to identify state actions and state actors," *Fabrikant v. French*, 691 F.3d 193, 207

(2d Cir. 2012) (quoting *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009)), "[t]hree

main tests have emerged":

> For the purposes of section 1983, the actions of a nominally private
> entity are attributable to the state . . . (1) [when] the entity acts
> pursuant to the coercive power of the state or is controlled by the
> state ("the compulsion test"); (2) when the state provides significant
> encouragement to the entity, the entity is a willful participant in joint
> activity with the state, or the entity's functions are entwined with
> state policies ("the joint action test" or "close nexus test"); or (3)
> when the entity has been delegated a public function by the state
> ("the public function test").

*Id.* (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir.

2008)). "The fundamental question under each test is whether the private entity's challenged

actions are 'fairly attributable' to the state." *Id.* (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830,

838 (1982)). There is a "two-part analytical approach to th[e] question of 'fair attribution'": a

"[p]laintiff must show that the allegedly wrongful action occurred as a result of the exercise of a

state-created right or privilege, or by a state-imposed rule of conduct"; and "that the party

charged with the deprivation is a person who is a state official or someone whose conduct is

otherwise chargeable to the State." *Dahlberg v. Becker*, 748 F.2d 85, 89 (2d Cir. 1984).

Here, the question is whether Reeves' structural assessment of their property and

determination that Plaintiffs' residence should be demolished can be "fairly attributed to the

state." *See Fabrikant,* 691 F.3d at 207 ("In analyzing whether a private entity acts under color of

state law for purposes of § 1983, we begin 'by identifying the specific conduct of which the

plaintiff complains,' rather than the general characteristics of the entity." (quoting *American*

*Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S.40, 51 (1999)). Plaintiffs rely on the "close nexus" or

"joint action" test in arguing that the Complaint adequately alleges Reeves acted under color of

state law. (Dkt. No. 31, at 6–7). "The close nexus test attributes private action to the state when

there is 'a sufficiently close nexus between the State and the challenged action of the [private] regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *McGugan v. Aldana-Bernier*, No. 11-cv-00342, 2012 WL 1514777, at *5, 2012 U.S. Dist. LEXIS 60340, at *13–14 (E.D.N.Y. Apr. 30, 2012) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)), *aff'd*, 752 F.3d 224 (2d Cir. 2014). This requirement assures "that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004. Thus, to satisfy the "'joint action test' or 'close nexus test,'" a plaintiff must allege that "the state provides '*significant encouragement*' to the entity, the entity is a 'willful participant in *joint activity* with the [s]tate,' or the entity's functions are '*entwined*' with state policies." *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (quoting *Sybalski*, 546 F.3d at 257).

Quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 941 (1982), Plaintiffs argue that courts have "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor.'" (Dkt. No. 31, at 5–6). In *Lugar*, the Court considered state action in the context of garnishment and prejudgment attachment procedures when state officers are acting jointly with a private creditor to secure property. 457 U.S. at 932. The Court held that a private creditor who "invoke[ed] the aid of state officials to take advantage of state-created attachment procedures," which permitted attachment on a creditor's ex parte application, was acting under color of state law. *Id.* at 942. Here, in contrast, Reeves was not acting jointly with state officials to seize property; he was hired by the City to assess the condition of property. (*See* Dkt. No. 1, ¶ 28) (alleging that Reeves "was contracted or otherwise hired by the City of Albany, at the direction of Richard LaJoy to assess the condition of Plaintiffs' property and to make the final decision as to whether

Plaintiffs' property would be demolished"). "The government enters into contracts for all kinds of goods and services without converting its contractors into state actors; architects designing federal buildings or engineers building bridges do not thereby become government actors." *Cooper*, 577 F.3d at 492 (citing *Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982) (the "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts"). Thus, without more, the contract between Reeves and the City does not allow a plausible inference that Reeves was a state actor.

Further, the remaining allegations regarding Reeves do not allow a plausible inference that the City Defendants "provided 'significant encouragement' to" Reeves in making his determination, that Reeves was "a 'willful participant in *joint activity* with the [s]tate,'" or that Reeves' activities were "'*entwined*' with state policies." *Sybalski*, 546 F.3d at 257. In his report, Reeves stated that the condition of "170 Orange Street is considered a high hazard to public safety and shall be removed as soon as practicable under the City of Albany's Emergency Condemnation Procedures." (Dkt. No. 1, ¶ 59). Although Plaintiffs assert that Reeves had "de facto decision making authority with respect to the demolition of 170 Orange Street," at best, the Complaint alleges that Reeves invoked the City's "Emergency Condemnation Procedures"; according to the Complaint, it was LaJoy and Sherman who decided to act the day after Reeves' assessment and directed 170 Orange Street be demolished on October 24, 2018, (*Id.* ¶ 61). *See Blum*, 457 U.S. at 1004–05 ("Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment."); *Chompupong v. City Schenectady*, 2019 WL 3321874, at *6, 2019 U.S. Dist. LEXIS 122883, at *16 (N.D.N.Y. July 24, 2019) (finding insufficient allegation of state action as to demolition contractor who submitted lowest bid to demolish building that the

city decided to demolish and whose "actions were limited to fulfilling the terms of its contract

with the government"); *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 443–46

(S.D.N.Y. 2003) (dismissing claims against defendant consultant hired by village to review

applications and determine compliance with village ordinance explaining that the defendant's

"review of the application for the proposed CVS [Pharmacy] in his capacity as a professional

architectural consultant to the Planning Board, and his offering of an opinion to the Planning

Board was not action taken under color of state law").

Indeed, "[a] private actor can only be 'a willful participant in joint activity with the State

or its agents' if the two share some common goal to violate the plaintiff's rights." *Betts*, 751 F.3d

at 85. Here, there are no allegations that would allow an inference that Reeves and the City

Defendants worked together with the common goal of depriving Plaintiffs' of their property, in

violation of the Fifth Amendment. Plaintiffs allege that Reeves stated in his structural report that

their residence was "a high hazard" and "shall be removed as soon as practicable" under City

procedures, (*id.* ¶ 59), and that the next day, City Defendants LaJoy and Sherman directed that it

be demolished, (*id.* ¶ 61). *See Betts*, 751 F.3d at 86 (finding the plaintiff failed to allege willful

participation in a joint activity because the plaintiff's allegation "that he was arrested upon the

false accusation of assault made against him by [the defendant,] a private citizen[,] to the police,"

was insufficient to state a plausible claim that the private citizen defendant "and the arresting

officers shared a common goal of violating [the plaintiff's] rights"). *See also Libbey v. Vill. of

Atl. Beach*, 982 F. Supp. 2d 185, 216 (E.D.N.Y. 2013) (finding the plaintiffs failed to allege

engineering defendants acted in concert with state actors under a section 1983 conspiracy theory

where the plaintiffs alleged only "that the Village Defendants hired the Engineering Defendants,

and that the Engineering Defendants provided expert opinions with which Plaintiffs disagreed").

Nor does the Complaint allege any facts that would allow a plausible inference that the City Defendants had any influence on Reeves' recommendation. *See Blum*, 457 U.S. at 1004, ("[A] State normally can be held responsible for a private decision . . . when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."). Accordingly, Reeves' motion to dismiss the § 1983 claims against him is granted.

### E.      State Law Claims

#### 1.      Statute of Limitations

The City Defendants argue that Plaintiffs' state law negligence claims arising from the demolition of their residence must be dismissed as time barred by the four-month statute of limitations set forth in New York Civil Procedure Laws and Rules ("N.Y. C.P.L.R.") § 217(1). (Dkt. No. 6-1, at 14). Plaintiffs respond that because their claims arise from the City Defendants' demolition of the neighboring property, 172 Orange Street, they are subject to a statute of limitations of one year and ninety days under § 217-a and their claims are therefore timely. (Dkt. No. 15, at 13–15).

Section 217(1) contains the statute of limitations applicable to Article 78 proceedings through which parties may seek judicial review of a state or governmental action. N.Y. C.P.L.R. § 217(1). As Plaintiffs' claims concern the City Defendants' alleged negligence during the demolition of the neighboring property, and not the City Defendants' determination to demolish their property, § 217(1) is inapplicable. *Cf. Vision for Children, Inc. v. City of Kingston*, No. 15-cv-0164, 2017 WL 9249665, at *21, 2017 U.S. Dist. LEXIS 222357, at *63 (N.D.N.Y. June 7, 2017) (noting that the claims challenging "the demolition after the fact, review could have been sought and obtained in an Article 78 proceeding if brought within four months, as required by N.Y. C.P.L.R. § 217(1)").

Under N.Y. C.P.L.R. 217-a, "every action for damages or injuries to real or personal property, or for the destruction thereof, or for personal injuries . . . against any political subdivision of the state . . . must be commenced in compliance with all the requirements of . . . subdivision one of section fifty-i of the general municipal law," N.Y. C.P.L.R. 217-a, which contains a statute of limitations of "one year and ninety days." N.Y. Gen. Mun. Law § 50-i(1). Therefore, plaintiffs alleging various forms of tort claims are subject to the one year and ninety-day statute of limitations. *See generally Wright v. City of Newburgh*, 686 N.Y.S.2d 74, 74 (2d Dep't 1999) (noting that intentional tort claims against municipal defendants are governed by one year and 90-day period set forth in General Municipal Law § 50-i).

Here, Plaintiffs allege that as a result of the City's failure to inspect for the existence of a shared wall between Plaintiff's home and the neighboring home, on October 20, 2018, the City "tore into the roof" of Plaintiff's home during the demolition of the neighboring home, causing damage to their property and "physical harm" to them. (Dkt. No. 1, ¶¶ 13–14, 51, 116). Property damage, physical harm, severe emotional distress and "out-of-pocket expenses" are forms of personal injury and damage to real or personal property. *See* N.Y. C.P.L.R. 217-a; *see also Wright*, 686 N.Y.S.2d at 74. As Plaintiffs filed this action on October 16, 2019, (Dkt. No. 1), less than a year after the demolition of 172 Orange Street, their claims are timely.

### 2.    Special Relationship

The City Defendants assert that Plaintiffs' tort claims must be dismissed because the Complaint "fails to allege the existence of a special relationship between Plaintiffs and the City of Albany." (Dkt. No. 16, at 2). Plaintiffs respond that they need not allege a special relationship or "special duty" "because the City's actions constitute a proprietary function as opposed to a governmental function." (Dkt. No. 20, at 3).

When a negligence claim is asserted against a municipality or its employees, "the first issue [a court] must consider 'is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose.'" *Connolly v. Long Island Power Auth.*, 30 N.Y.3d 719, 727 (2018) (quoting *Applewhite v Accuhealth, Inc.*, 21 N.Y.3d 420, 425 (2013)). "[I]f the action challenged in the litigation is governmental, the existence of a special duty is an element of the plaintiff's negligence cause of action." *Turturro v. City of New York*, 28 N.Y.3d 469, 477 (2016). The New York Court of Appeals has explained that:

> At one end of the continuum lie purely governmental functions undertaken for the protection and safety of the public pursuant to the general police powers. In this category, the State remains generally immune from negligence claims, absent a special relationship between the injured party and the State. On the opposite periphery lie proprietary functions in which governmental activities essentially substitute for or supplement traditionally private enterprises. Activities [constituting proprietary functions] generally subject the State to the same duty of care as private individuals and institutions engaging in the same activit[ies].

*Sebastian v. State*, 93 N.Y.2d 790, 793 (1999) (internal quotation marks and citations omitted) (alteration in original). The focus of the inquiry is "'the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred . . ., not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred.'" *Grasso v. New York State Thruway Auth.*, 159 A.D.3d 674, 677 (2d Dep't 2018) (quoting *Matter of World Trade Ctr. Bombing Litig.*, 17 N.Y.3d 428, 447 (2011)).

The Court need not decide whether the City Defendants were performing a governmental or proprietary function during the demolition of 172 Orange Street because even assuming it was governmental, the Complaint plausibly alleges facts that suggest that the City Defendants'

actions created a special relationship. *See, e.g.*, *Williams v. Town of Hempstead*, No. 16-cv-1992, 2019 WL 2363161, at *9, 2019 U.S. Dist. LEXIS 29625, at *28–29 (E.D.N.Y. Feb. 22, 2019) (concluding that "the enforcement of the Town Code and the demolishment of a building deemed to be unsafe or dangerous by a municipal entity is a governmental function"), *report and recommendation adopted as modified*, 2019 WL 1403114, 2019 U.S. Dist. LEXIS 53100 (E.D.N.Y. Mar. 28, 2019). As the Court of Appeals has "explained, '[t]he core principle is that to 'sustain liability against a municipality, the duty breached must be more than that owed the public generally.'" *Tara N.P. v. W. Suffolk Bd. of Co-op. Educ. Servs.*, 28 N.Y.3d 709, 714 (2017) (quoting *Applewhite*, 21 N.Y.3d at 426). A special duty arises when: "(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition." *Applewhite*, 21 N.Y.3d at 426.

Plaintiffs sufficiently allege that the City Defendants took positive control of a known, blatant and dangerous safety condition. Plaintiffs allege that given the properties' shared wall, the demolition activities at 172 Orange Street posed a risk to their adjoining property, that the City Defendants were aware of this risk because not only had LaJoy been involved in a prior demolition of a "row house" elsewhere in Albany, that "destabilized and allegedly necessitated the demolition of a neighboring home," (Dkt. No. 1, ¶ 9), but Plaintiffs advised the City Defendants on the day of the demolition that 172 Orange Street shared a wall with their residence, 170 Orange Street. (*Id.* ¶ 46). The City Defendants "assured" Plaintiffs that the "demolition crew were aware of the risks and knew how to perform the demolition safely," (*id.* ¶ 48), did not tell Plaintiffs that they should vacate their residence, and "affirmatively instructed"

Plaintiffs "to close their windows during the demolition." (*Id.* ¶ 50). Relying on these representations, Plaintiffs were inside their residence when "the demolition machine . . . tore into the roof of 170 Orange Street, removing portions of the roof . . . of the house while the family was still inside," "fill[ing] the air inside the house with debris and particulate matter that Plaintiffs inhaled." (*Id.* ¶ 53). Thus, accepting the Complaint's allegations as true, it is plausible to infer that (i) the City Defendants knew that a blatant and dangerous safety condition existed because Plaintiff's residence shared a wall with the property they were demolishing, (ii) notwithstanding this knowledge, affirmatively indicated that the demolition activities were safe and that Plaintiffs need only close their windows, and (iii) Plaintiffs justifiably relied on these representations and were inside their residence when it was damaged. *See Normanskill Creek, LLC v. Town of Bethlehem*, 160 A.D.3d 1249, 1252 (3d Dep't 2018) (finding the complaint adequately stated negligence cause of action against municipality based on a "special relationship" where it alleged that "defendant knew that a blatant and dangerous safety violation existed on plaintiffs' property and, notwithstanding this knowledge, affirmatively indicated that the fill activities were safe, and plaintiffs justifiably relied on these representations when they continued to deposit fill on the premises"). Accordingly, the City Defendants' motion to dismiss Plaintiffs' state law claims is denied.

### F.   Crossclaim and Cross-Motion to Amend[6]

The City Defendants move to dismiss Defendant M. Cristo's crossclaim for indemnification, arguing that it fails to allege that they owe a cognizable duty to M. Cristo, Inc.

---

[6] Because the Court grants Defendant M. Cristo, Inc.'s motion to amend and denies as moot the City Defendants' motion to dismiss M. Cristo Inc.'s crossclaim, it has not determined whether the exhibits M. Cristo Inc. submitted in opposition to the City Defendants' motion, (*see generally* Dkt. No. 25), may be considered. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the [pleading] itself.").

(Dkt. No. 19-1, at 4–5). M. Cristo opposes the City Defendants' motion and cross-moves to amend its Answer. (Dkt. Nos. 25, 26, 27). In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where plaintiffs seek to amend their [pleading] while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)). As the proposed Amended Answer appears to allege additional facts regarding the crossclaim at issue, (*see* Dkt. No. 27, ¶¶ 63–87), and neither the City Defendants nor Plaintiffs have opposed or responded to M. Cristo's cross-motion to amend, the Court grants M. Cristo's cross-motion to amend, directs M. Cristo to file the proposed Amended Answer by July 23, 2020, and denies as moot the City Defendants' motion to dismiss M. Cristo's crossclaim.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that the City Defendants' motion to dismiss (Dkt. No. 6) is **GRANTED** with respect to the Fourteenth Amendment Procedural Due Process Claim; and it is further

**ORDERED** that the Fourteenth Amendment Procedural Due Process Claim is **DISMISSED without prejudice**; and it is further

**ORDERED** that the Fifth and Fourteenth Amendment claims asserted by the minor Plaintiffs, K.G.J., R.D., A.J., M.J., Ra.J.F., and R.J.F., are **DISMISSED without prejudice**; and it is further

**ORDERED** that the City Defendants' motion to dismiss (Dkt. No. 6) is otherwise **DENIED** in its entirety; and it is further

**ORDERED** that R. Russell Reeves' motion to dismiss (Dkt. No. 21) the Fourteenth Amendment Procedural Due Process Claim and Eighth Amendment Taking Claim is **GRANTED**; and it is further

**ORDERED** that the Fourteenth Amendment Procedural Due Process and Eighth Amendment Taking Claims alleged against R. Russell Reeves are **DISMISSED without prejudice**; and it is further

**ORDERED** that M. Cristo, Inc.'s cross-motion to amend the answer (Dkt. No. 26) is **GRANTED**; and it is further

**ORDERED** that M. Cristo, Inc., is directed to file the proposed Amended Answer by July 23, 2020; and it is further

**ORDERED** that the City Defendants' motion to dismiss (Dkt. No. 19) M. Cristo, Inc.'s crossclaim is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated: July 9, 2020
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge